CHIMENTO v. GALLAGHER BENEFIT SERVICES
2023 OK 22
Case Number: 120089
Decided: 03/21/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 22, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

SUE CHIMENTO, Plaintiff/Petitioner,
v.
GALLAGHER BENEFIT SERVICES, INC., and SCOTT MCCOY, Individually, Defendants/Respondents.
APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
Honorable Daman Cantrell, District Judge
¶0 In the underlying lawsuit, Plaintiff, Sue Chimento, brought claims for defamation, negligence, intentional interference with business relations, false representation, constructive fraud, and conspiracy against Defendants, Gallagher Benefit Services, Inc., and Scott McCoy, based on allegations they made to the Tulsa Police Department, Tulsa County District Attorney's Office, and the Oklahoma Insurance Department that she had embezzled money while under their employment. The trial court granted partial summary judgment to Defendants, finding that their statements to the police and district attorney were subject to an absolute privilege and their statements to Oklahoma Insurance Department were subject to a qualified privilege under . The trial court certified its order granting partial summary judgment for interlocutory review. We hold that Defendants' statements to the police, the district attorney, and the Oklahoma Insurance Department are afforded a qualified privilege.
CERTIORARI PREVIOUSLY GRANTED;
TRIAL COURT AFFIRMED IN PART, REVERSED IN PART;
REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
Eric W. Stall, Swab Stall Horton & Fu, P.A., Tulsa, Oklahoma, and Douglas E. Stall, Douglas E. Stall, P.L.L.C., Tulsa, Oklahoma, for Plaintiff/Petitioner.
Ryan A. Ray and Rebecca S. Woodward, Norman Wohlgemuth, LLP, Tulsa, Oklahoma, for Defendants/Respondents.
OPINION
ROWE, V.C.J.:
I. BACKGROUND
¶1 In February 2013, Petitioner, Sue Chimento, began working for Respondent Scott McCoy at his insurance agency, Scott McCoy Insurance Agency ("SMIA"). One of Chimento's primary responsibilities at SMIA was administration of its Tribal Sponsorship Program, through which SMIA assisted Native American Tribes in procuring health insurance for their employees. Specifically, Chimento would receive premium invoices for their tribal clients from the insurance companies and forward those bills to the Tribes. The Tribes would then pay a lump sum to SMIA to cover the premiums. SMIA established a bank account at Midfirst Bank dedicated to receiving these payments (the "Tribal Account"). Chimento would pay individual premiums on behalf of the Tribes' employees out of the Tribal Account. Given how the Tribal Account was utilized, it was typical for the Tribal Account to have a zero balance.
¶2 In early September 2016, SMIA was acquired by Arthur J. Gallagher & Co. ("AJG"). Chimento was kept as an employee after the acquisition to perform insurance-related services for AJG's wholly-owned subsidiary, Gallagher Benefit Services, Inc. ("GBS"). Scott McCoy was kept as well and continued to serve as Chimento's supervisor. In her role with AJG/GBS, Chimento continued administering the Tribal Sponsorship Program and utilizing the Tribal Account.
¶3 In March 2017, Midfirst Bank contacted Scott McCoy and informed him that the Tribal Account was overdrafted. Shortly after McCoy inquired of Chimento as to why the account was overdrafted, Chimento resigned her employment with AJG. On November 16, 2017, McCoy filed a report with the Tulsa Police Department ("TPD") alleging that Chimento embezzled approximately fifty-one thousand dollars ($51,000.00) from SMIA and AJG/GBS. After filing the police report, McCoy followed up several times with TPD and the Tulsa County District Attorney's Office regarding the status of their investigation and whether any criminal charges had been filed against Chimento.
¶4 On April 5, 2018, the Tulsa County District Attorney filed a criminal information charging Chimento with one count of felony embezzlement. Chimento was arrested the following day. On June 19, 2018, the District Attorney dismissed the charges against Chimento for insufficient evidence.
¶5 On or about July 9, 2019, Chimento submitted an application with the Oklahoma Insurance Department ("OID") to renew her resident insurance producer license. On October 1, 2019, the OID denied Chimento's renewal application, citing suspected violations of the Oklahoma Producer Licensing Act in (A). The OID relied on information and evidence obtained in an investigation by the Oklahoma Anti-Fraud Division, which was derived from the investigation conducted by TPD. On October 23, 2019, the OID issued a Notice of Hearing and Order to Show Cause to Chimento alleging numerous violations of the Oklahoma Insurance Code, including acting as a third-party administrator without a license, mishandling premium payments, making false entries into accounting books, and engaging in fraudulent and dishonest conduct.
II. PROCEDURAL HISTORY
¶6 On September 21, 2018, Chimento filed suit against AJG/GBS and McCoy (collectively "Defendants") alleging defamation, negligence, intentional interference with business relations, false representation, constructive fraud, and conspiracy. Chimento would later dismiss her defamation claims. Each of Chimento's remaining claims adhere to a general thesis, that Defendants made false allegations to the Tulsa County District Attorney's Office, TPD, and other third parties with the intent of harming her reputation and business. Defendants filed counterclaims against Chimento alleging breach of her employment agreement, breach of fiduciary duty, fraud, unjust enrichment, tortious interference with contract, misappropriation of trade secrets, misappropriation of confidential business information, and civil conspiracy.
¶7 Between February 21 and February 24, 2020, the parties filed cross motions for summary judgment on their own and each other's claims and counterclaims. In Defendants' motion for summary judgment on Chimento's remaining claims, Defendants asserted that any of their statements to TPD, the District Attorney's Office, and the OID were subject to an absolute privilege, and thus, to the extent any of Chimento's claims were based on these statements, the claims must fail. On October 27, 2020, the trial court granted summary judgment to AJG/GBS on all of Chimento's remaining claims. The trial court granted summary judgment to Scott McCoy on all of Chimento's remaining claims, except those for false representation and constructive fraud. In granting summary judgment to Defendants, the trial court found that Defendants' statements to TPD and to the District Attorney's office were subject to an absolute privilege under and their statements to the OID were subject to a qualified privilege under . The matter was then set for trial on the parties' remaining claims and counterclaims.
¶8 On November 1, 2021, the parties appeared in court to commence with the trial. Prior to the proceedings, the parties conducted an in camera conference with the court to discuss a number of motions in limine. During that conference, the trial court realized that a number of evidentiary problems had been created by its finding that Defendants' statements to TPD, the District Attorney's Office, and the OID were privileged. Essentially, the parties would have been hard-pressed to litigate the remaining claims without referencing the investigations by TPD, the District Attorney's Office, and the OID, which would inevitably involve reference to the allegedly privileged statements.
¶9 Following these discussions, the parties submitted a Joint Motion to Certify Questions of Law for Immediate Interlocutory Review. On November 24, 2021, the trial court issued an order granting partial summary judgment and certifying the following questions of law for immediate interlocutory appeal:
1. Are communications made to a police officer regarding the allegation that another has committed a crime entitled to an absolute privilege under the doctrine set forth in Kirschstein v. Haynes, , ? Or are such communications only qualifiedly privileged under the doctrine set forth in Johnson v. Inglis, , ¶ 6, and in the comments to OUJI 3d, no. 28.8?
2. Are communications made to a District Attorney's office regarding the allegation that another has committed a crime entitled to an absolute privilege under the doctrine set forth in Kirschstein v. Haynes, ? Or are such communications only qualifiedly privileged under the doctrine set forth in Johnson v. Inglis, , ¶ 6, and in the comments to OUJI 3d, no. 28.8?
3. Are communications by an insurer, employee, or agent of an insurer made to the Insurance Department that another insurance agent has engaged in or is engaging in an act or practice that violates any statute or administrative rule of this state related to insurance fraud entitled to an absolute privilege under the doctrine set forth in Kirschstein v. Haynes, [,] and Presson v. Bill Beckman Co., , ? Or are such communications only qualifiedly privileged under Title 36, § 363 A and B, and the doctrine set forth in Johnson v. Inglis, , ¶ 6, and in the comments to OUJI 3d, no. 28.8?
Both Chimento and Defendants filed petitions for certiorari on the certified interlocutory order, which we granted and consolidated.
III. STANDARD OF REVIEW
¶10 We review a trial court's order granting summary judgment de novo. Tiger v. Verdigris Valley Elec. Coop., , ¶ 13, , 1011. Likewise, the questions posed in the trial court's certified interlocutory order are questions of law, which are subject to de novo review. Lincoln Farm, L.L.C. v. Oppliger, , ¶ 12, , 975. De novo review involves a plenary, independent, and non-deferential examination of the issues presented. Benedetti v. Cimarex Energy Co., , ¶ 5, , 45.
IV. DISCUSSION
A. Defendants' statements to law enforcement are entitled to a qualified privilege.
¶11 The parties are in agreement that both TPD and the District Attorney's Office constitute law enforcement entities, and thus, the first two questions certified for review by the trial court can be addressed simultaneously. We have previously held that statements to law enforcement are entitled to a qualified privilege.
¶12 In Beshiers v. Allen, , , the defendant alleged to the county sheriff that the plaintiff robbed a local bank. The plaintiff brought a defamation claim against the defendant. Id. at 142. Following a jury trial, the defendant appealed the trial court's refusal to give several jury instructions related to damages. Id. at 143. In addressing those issues, we stated:
The communication made to the sheriff under the facts of this case is a qualified privilege, that is, it is a privilege which exists only if the defendant made it in good faith, with an honest belief that it was true, and with the sole intent to aid justice, and with no malice toward the plaintiff, or intent to injure him ....
Id. ¶ 2, , 143.
¶13 Similarly, in Johnson v. Inglis, , , the plaintiff sued for defamation after defendant reported to several Oklahoma City police officers that the plaintiff was illegally selling alcohol out of her home. Following a bench trial, the trial court awarded damages to the plaintiff. Id. ¶ 3, 123 P.2d at 273. Thereafter, the defendant filed a motion to vacate the judgment claiming the statements made to the police officers were subject to an absolute privilege, which the trial court granted. Id. ¶ 4, 123 P.2d at 273-74. We found that the trial court erred in vacating the judgment because "[t]he communication made by the defendant to the police officers does not come within the rule of absolute privilege but if privileged was qualifiedly so." Id. ¶ 5, 123 P.2d at 274.
¶14 In Magness v. Pledger, , , the defendants collectively petitioned the Attorney General of Oklahoma to investigate the plaintiff for embezzlement. The plaintiff sued the defendants for libel, but the trial court dismissed his claim, finding that the petition fell within the absolute privilege created by . Id. ¶ 1, 334 P.2d at 793. On appeal, we reversed the trial court's judgment, finding that the defamatory statements in the petition were not covered by § 1443 because they were not made in the course of a legislative, judicial, or other lawfully authorized proceeding. Id. ¶ 8, 334 P.2d at 794-95. We also noted that the outcome was consistent with our holdings in Beshiers and Inglis. Id. ¶ 11, 334 P.2d at 795.
¶15 In the trilogy of cases, Magness, Inglis, and Beshiers, we applied a qualified privilege to statements made to law enforcement. Following this trilogy of cases, we applied an absolute privilege from the Restatement (Second) of Torts in Kirschstein v. Haynes, , , to a different class of statements. In Kirschstein, one of the defendants, who had been raised exclusively by her father, was attempting to obtain a delayed birth certificate through the Oklahoma Department of Health, after discovering that there was no record of her birth on file with state authorities. Id. ¶¶ 3-4, 788 P.2d at 945. The statute for obtaining a delayed birth certificate, 69 O.S.1981 § 1-313, had evidentiary requirements regarding the facts of birth, including the date of birth, place of birth, and parentage. Id. ¶ 3, 788 P.2d at 945. The defendant hired an attorney to assist her in procuring the birth certificate. Id. As part of that effort, the attorney procured an affidavit from an elderly physician in the town where the defendant was allegedly born, stating that the plaintiff had given birth to the defendant. Id. ¶ 5, 788 P.2d at 946. The defendant disclosed the contents of the affidavit to several relatives but never used it to obtain her delayed birth certificate. Id. ¶ 6, 788 P.2d at 946-47.
¶16 When the plaintiff learned of the disclosure, she brought suit against the defendant, the attorney, and the physician for defamation, intentional infliction of emotional distress, and determination of heirs. Id. ¶ 7, 788 P.2d at 947. The trial court granted summary judgment in favor of the defendants finding the affidavit and its publication were privileged. Id. The Court of Civil Appeals affirmed the trial court's ruling. Id. ¶ 9, 788 P.2d at 947. Although we found that the affidavit and its publication were not covered by the statutory privilege afforded under § 1443.1, we applied "the standards set forth at Restatement (Second) of Torts §§ 586, 587, 588," recognizing an absolute privilege under the common law for communications made preliminary to proposed judicial or quasi-judicial proceedings in favor of attorneys, parties and witnesses. Id. ¶¶ 2, 13, 788 P.2d at 945-48.
¶17 Pursuant to these Restatement provisions, statements made to law enforcement would be subject to an absolute privilege, rather than the qualified privilege they were afforded under Magness, Inglis, and Beshiers. In Kirschstein, we did not address this potential conflict, nor did we explicitly overrule Magness, Inglis, and Beshiers.
¶18 Defendants claim that although Kirschstein dealt with a different class of statements, it implicitly overruled Magness, Inglis, and Beshiers by adopting the absolute privileges described in §§ 586-588 of the Second Restatement. Chimento claims that Kirschstein does not apply in this instance and that the qualified privilege described in Magness, Inglis, and Beshiers should apply instead. The parties' respective positions pose two basic questions: (1) whether Kirschstein applies to statements made to law enforcement, and (2) whether Kirschstein implicitly overruled our prior precedents that afford only a conditional privilege to statements made to law enforcement. We answer both questions in the negative.
¶19 Defendants claim that Kirschstein applies to statements made to law enforcement. In particular, Defendants point out that in Kirschstein we "favorably cited" to a Court of Civil Appeals ("COCA") opinion, White v. Basnett, , , in which COCA determined that the absolute privilege under covered a citizen's complaint of police brutality filed with the Tulsa Police Department.
¶20 Initially, we note that White is distinguishable from the present matter in that it involved a complaint lodged against a law enforcement officer, whereas here the allegation of wrongdoing was lodged against a private citizen. Additionally, the reference to White comes in a footnote to the following paragraph:
This Court has applied an absolute privilege to communications made during various proceedings [including White]. In said cases we construed the predecessor statute to to grant a privilege to utterances made in judicial or other proceedings authorized by law. The situation here does not expressly fall within the statute's protection because the communications involved were all made preliminary to a proposed proceeding the record fails to disclose has ever been instituted. We, thus, must determine if the common law, as embodied in the Restatement, provides any privilege to the communications at issue.
Kirschstein, , ¶ 13, 788 P.2d at 948 (emphasis in original) (internal citations omitted). As the paragraph itself makes clear, the Court in Kirschstein did not believe that White was instructive on the question it was considering because the statements at issue in Kirschstein were made prior to a proposed proceeding.
¶21 Aside from the reference to White, there is no indication in Kirschstein that the Court contemplated its pronouncements extending beyond the circumstances unique to that case. Based on the foregoing, we find that Kirschstein does not apply to statements made to law enforcement.
¶22 Additionally, Kirschstein did not implicitly overrule Magness, Inglis, and Beshiers. Defendants note that this Court has previously recognized the doctrine of overruling by implication. See Sovereign Camp, Woodmen of the World v. Smith, , ¶ 11, , 410; Alexander v. Samuels, , ¶ 18, . In both Sovereign Camp and Alexander, however, the prior decisions which were deemed overruled by implication were contrary to recent decisions of the United States Supreme Court and, thus no longer valid regardless. Here, Magness, Inglis, and Beshiers are not in conflict with any decisions of the United States Supreme Court.
¶23 Defendants also claim that a series of opinions by COCA utilizing the rule announced in Kirschstein demonstrate that it is now controlling on the question before us. See, e.g., Presson v. Bill Beckman Co., Inc., , . COCA opinions are not binding on this Court. Arulkumar v. Arulkumar, , ¶ 21, , 137; Foshee v. Foshee, , ¶ 14 n.6, , 1168. Thus, although COCA may have extended the absolute privilege from Kirschstein to statements made to law enforcement, we decline to do the same. To the extent any COCA opinions conflict with our holding in this matter, they are hereby overruled.
¶24 Based on the foregoing, we find that statements made to law enforcement enjoy a qualified--and not absolute--privilege. Thus, any statements Defendants made to TPD and the District Attorney's Office only enjoy a qualified privilege.
B. Defendants' statements to the Oklahoma Insurance Department are entitled to a qualified privilege.
¶25 The remaining question certified for interlocutory review asks whether Defendants' statements to the Oklahoma Insurance Department are absolutely privileged pursuant to Kirschstein or only qualifiedly privileged pursuant to . Section 363(B) provides qualified immunity from civil actions for individuals who furnish information to the OID regarding fraudulent insurance activity. The trial court determined that the qualified privilege under § 363(B) applied. We agree.
¶26 We recently interpreted and applied this statute in Loven v. Church Mutual Ins. Co., , . In Loven, the plaintiff, a general contractor, applied with the OID to become licensed resident public adjuster. As part of her application, the plaintiff disclosed that she was being sued by a former client, who alleged that she had illegally acted as unlicensed public adjuster. Id. ¶ 4, 452 P.3d at 420. Due to her disclosure, the OID's Anti-Fraud Unit initiated an investigation of the plaintiff. Id. In the course of its investigation, the Anti-Fraud Unit contacted the defendants, Church Mutual Insurance Company and one of its adjusters, with whom the plaintiff had negotiated several clients' claim settlements. Id. Due in part to these allegations, the OID denied the plaintiff's application. Id. ¶ 5, 452 P.3d at 420. The State of Oklahoma also filed two felony criminal charges against the plaintiff and her subcontractor for filing a false claim of insurance and conspiracy to commit a felony, but the charges were eventually dismissed. Id. ¶ 6, 452 P.3d at 421.
¶27 The plaintiff subsequently brought suit alleging intentional interference with her prospective business opportunity. Id. Specifically, the plaintiff alleged the defendants gave harmful information to the OID to retaliate against her for negotiating higher claim settlements for her clients than the defendants initially offered to pay. Id. The trial court granted summary judgment in favor of the defendants, finding that the defendants were entitled to statutory immunity under § 363(B). Id. ¶ 9, 452 P.3d at 421. We affirmed the trial court finding that the statutory immunity applied:
The immunity provisions of §363 expressly apply to either reports made under subsection A, or when an insurer furnishes information, either orally or in writing for an investigation or prosecution of suspected insurance fraud. The terms of the statute, insofar as to when immunity applies, are clear and unambiguous. If Church Mutual, or any other insurer, furnished information for an investigation or prosecution, as they did in this cause, they are protected from civil action for libel, slander or any other relevant tort or any criminal action.
The only exception for such immunity is if the insurer provides such information fraudulently, in bad faith, in reckless disregard for the truth, or with actual malice.
Id. ¶¶ 15-16, 452 P.3d at 423 (internal citations omitted).
¶28 Defendants claim that the absolute privilege adopted in Kirschstein should apply instead of the qualified immunity outlined in § 363 and applied in Loven. Specifically, Defendants argue that their statements to OID constitute "communications made preliminary to proposed [...] quasi-judicial proceedings" and thus fall within Kirschstein's absolute privilege. See Kirschstein, , ¶ 2, 788 P.2d at 945. However, in Kirschstein, the statements which prompted litigation were made to members of the defendant's family, rather than to an administrative agency like OID. Additionally, Kirschstein did not involve an applicable statute, like § 363, establishing qualified immunity for statements made to the relevant administrative agency, nor were we bound in that case by a prior decision from the Court applying the statute in similar circumstances, like Loven.
¶29 Defendants argue Loven is distinguishable from this case because Loven did not address Kirschstein in reaching its holding. The Court in Loven did not address Kirschstein as the facts of those cases reveal that they are obviously distinguishable. Defendants also claim that Loven is distinguishable from this case because it only applies in situations where the defendant reports suspected fraud in the first instance, whereas Defendants here only responded to inquiries from the OID. This is a mischaracterization of Loven. In Loven, the defendant, Church Mutual Insurance Company, was also responding to an inquiry from the Anti-Fraud Unit of the OID when it made allegations that the plaintiff was operating as an unlicensed public adjuster.
¶30 With respect to § 363, Defendants claim that it does not abrogate the common law absolute privilege recognized in Kirschstein. Defendants cite to previous instances where statutes stood in conflict with common law rules, and we held that statutory enactments do not abrogate the common law absent a clear expression of legislative intent. See, e.g., Greenberg v. Wolfberg, , ; Lee v. Bueno, , . We have clarified in those cases, however, that there need not be a clearly expressed legislative intent to abrogate the common law. But rather, if the general intent of the statute is clear and the statute conflicts with a common law rule, the statute will control. The Oklahoma Statutes make clear that statutory enactments are to be liberally construed to accomplish their objective and that where they conflict with the common law, statute will control.
¶31 In the present matter, we find that the clear and unambiguous intent of § 363 is to provide qualified immunity from civil actions for individuals who furnish information to the OID regarding fraudulent insurance activity. Thus, to the extent that the common law absolute privilege recognized in Kirschstein conflicts with § 363 by affording Defendants a broader immunity than the statute provides, we find that § 363 controls.
¶32 Lastly, Defendants claim that failure by this Court to recognize an absolute privilege for their statements to OID would undermine the Legislature's policy of requiring confidentiality over OID investigations, as expressed in . Section 361(D) provides, in pertinent part:
Records, documents, reports and evidence obtained or created by the Anti-Fraud Unit as a result of an inquiry or investigation of any suspected insurance related crime shall be confidential and shall not be subject to the Oklahoma Open Records Act or to outside review or release by any individual.
In the trial court, the OID cited § 361(D) in an attempt to quash a series of subpoenas issued to one of its investigators. Defendants claim it would be unfair to subject them to potential liability for their statements to the OID, while the OID's use of these confidentiality provisions limits Defendants' ability to prove that the investigation was prompted by something other than their statements.
¶33 We disagree. As noted in the OID's Notice of Hearing to Chimento, its investigation was prompted by and relied upon the investigation of the Tulsa Police Department into allegations made by Defendants against Chimento. The allegations in the Notice of Hearing relate exclusively to Chimento's employment by the Defendants. Thus, the impetus for the OID's investigation is hardly confidential at this point. Additionally, given our finding that Defendants' statements to law enforcement are subject only to a qualified privilege, it would be absurd to find that, by their incorporation into an OID investigation, they obtain an absolute privilege.
¶34 We find that Defendants' statements to the OID are subject to a qualified privilege under .
V. CONCLUSION
¶35 On review, we find that Defendants statements to TPD and the District Attorney's Office are entitled to a qualified privilege. Likewise, Defendants statements to the Oklahoma Insurance Department are entitled to a qualified privilege under . Accordingly, the trial court's order granting partial summary judgment is affirmed in part and reversed in part. This matter is remanded to the trial court for further proceedings consistent with this opinion.
CERTIORARI PREVIOUSLY GRANTED;
TRIAL COURT AFFIRMED IN PART, REVERSED IN PART;
REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
Rowe, V.C.J., Kauger, J. (by separate writing), Winchester, Edmondson, Gurich, Darby, and Kuehn, JJ., concur.
Combs, J., concurs in result.
Kane, C.J., not participating.
FOOTNOTES
 A June 19, 2018 docket entry in Chimento's criminal case states, "[DISMISSED] BY COURT, AT REQUEST OF STATE, COST TO STATE. INSUFFICIENT EVIDENCE. BOND EXONERATED."
 Title 12, Section 1443.1 states:
A. A privileged publication or communication is one made:
First. In any legislative or judicial proceeding or any other proceeding authorized by law;
Second. In the proper discharge of an official duty;
Third. By a fair and true report of any legislative or judicial or other proceeding authorized by law, or anything said in the course thereof, and any and all expressions of opinion in regard thereto, and criticisms thereon, and any and all criticisms upon the official acts of any and all public officers, except where the matter stated of and concerning the official act done, or of the officer, falsely imputes crime to the officer so criticized.
B. No publication which under this section would be privileged shall be punishable as libel.
 Section 1443 was the predecessor to § 1443.1 and contained substantively similar terms.
 In particular, § 587 of the Second Restatement provides:
A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.
Additionally, comment b to § 587 states:
[The rule] applies to communications made by a client to his attorney with respect to proposed litigation as well as to information given and informal complaints made to a prosecuting attorney or other proper officer preliminary to a proposed criminal prosecution whether or not the information is followed by a formal complaint or affidavit.
(emphasis added).
 The following paragraph from Sovereign Camp explains the situation neatly:
Taking up, first, the question of the validity of such provision, the plaintiff relies upon the case of Modern Woodmen of America v. Michelin, , , 36 A.L.R. 971, which case involved the seven years' absence rule and a clause in the contract that such absence shall not be regarded as evidence of death until after the full term of the member's life expectancy. That case did hold such a clause contrary to public policy and void. However, it was decided, before the Supreme Court of the United States handed down its decision in Modern Woodmen of America v. Mixer, 267 U.S. 544, 45 S.Ct. 389, 69 L.Ed. 783, 41 A.L. R. 1384, wherein the court held that a citizen of one state becoming a member of such a society is bound by a by-law subsequently adopted which is declared valid by the courts of the state of the domicile of the society, that "membership looks to and must be governed by the law of the State granting the incorporation." The case involved the identical question passed upon in the Michelin Case, and by reason of that decision the Michelin Case was practically (but not expressly) overruled by this court in DeVore-Norton v. Brotherhood of Locomotive Firemen, , , 14, 60 A.L.R. 586, wherein it was stated that "the rule announced in the Mixer Case * * * is controlling in this state." And in Modern Woodmen of America v. Crudup (decided by this court on October 15, 1935, long after the briefs were filed herein) 51 P.(2d) 718 (not reported [in State report]), the Michelin Case was again overruled by implication and the rule announced in the DeVore-Norton Case expressly adopted.
Sovereign Camp, Woodmen of the World v. Smith, , ¶ 11, , 410. We acknowledged that two of our prior precedents were overruled by implication under similar circumstances in Alexander:
The defendants rely on and quote the language from Walker v. Brown, , , and Wilson v. Greer, , , but these cases were overruled by implication in Blundell v. Wallace, , , and as pointed out in Spaniard v. Tanton, , .
Alexander v. Samuels, , ¶ 18, . We explained further in Spaniard v. Tanton:
To sustain the judgment, counsel cite Walker v. Brown, , ; Wilson v. Greer, , . These decisions are in conflict with the case above cited, and, such case having been affirmed by the United States Supreme Court, former decisions of this court to the contrary can not longer be considered as authority.
Spaniard v. Tanton, , ¶ 5. , 624.
 While it did not factor into our analysis, we note that this outcome appears to be consistent with the comments to Oklahoma Uniform Jury Instruction 28.8, which describes the affirmative defense of qualified privilege in defamation actions. Specifically, the comments state:
Examples of circumstances where this qualified privilege may apply include statements concerning a former employee by a former employer to a prospective employer, reports to police officers, statements by a credit rating agency to a subscriber, communications between members of a trade association, and communications between family members. See RESTATEMENT (SECOND) OF TORTS § 595 (1977) comments g, h, i, and j.
(emphasis added).
 For reference, § 363 provides, in pertinent part:
A. Any insurer, employee or agent of any insurer who has reason to believe that a person or entity has engaged in or is engaging in an act or practice that violates any statute or administrative rule of this state related to insurance fraud shall immediately notify the Anti-Fraud Unit of the Insurance Department and, in the case of an allegation of claimant fraud, the Workers' Compensation and Insurance Fraud Unit of the Office of the Attorney General.
B. No insurer, employee or agent of an insurer, or any other person acting in the absence of fraud, bad faith, reckless disregard for the truth, or actual malice shall be subject to civil liability for libel, slander or any other relevant tort or subject to criminal prosecution by virtue of filing of reports or furnishing other information either orally or in writing, concerning suspected, anticipated or completed fraudulent insurance acts to the Anti-Fraud Division of the Insurance Department or the Workers' Compensation and Insurance Fraud Unit of the Office of the Attorney General pursuant to subsection A of this section or to any other agency involved in the investigation or prosecution of suspected insurance fraud.
 In Lee v. Bueno, , , we explained:
There is no express legislative intent in to abolish the collateral source rule in its entirety, for insured victims of torts or otherwise. Rather, explicitly restricts the admissibility of certain types of evidence. There is no ambiguity in the language and expressed intention of , and to the extent it conflicts with operation of the collateral source rule, it controls.
Id. ¶ 51, 381 P.3d at 752.
 Title 12, § 2 provides:
The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma; but the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object.
Additionally, states:
The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to the laws of this state, which are to be liberally construed with a view to effect their objects and to promote justice.
 Allegation of Fact #6 in the OID's Notice of Hearing states:
Respondent's renewal application was denied on October 1, 2019, based upon information and evidence obtained in an investigation conducted by the Oklahoma Anti-Fraud Division, which relied in part on an investigation conducted by the Tulsa Police Department.
Allegations of Fact 9-40, which comprise the remainder of the OID's allegations against Chimento, all relate to her employment with Defendants and her handling of the Tribal Sponsorship Program and utilization of the Tribal Account.

KAUGER, J., with whom Gurich, J., and Kuehn, J., join concurring:
¶1 I joined Justice Doolin in his concurring in part/dissenting in part in Kirschstein v. Hayes, , because the Court applied absolute privilege, rather than qualified privilege. Obviously, Kirschstein created confusion as to when and how it would apply to other causes.
¶2 Kirschstein did not involve a quasi-judicial proceeding and was, at least partially, wrongly decided. The majority holds that to "the extent any Court of Civil Appeals opinions conflict with this cause, they are overruled." I would not leave the opportunity for more confusion to arise. Rather, I would also overrule Kirschstein, leaving the question of whether it extends absolute privilege to any other cause unnecessary.